Joseph L. Harris, Appellant, *v.* Commonwealth of Pennsylvania, State Athletic Commission, Appellee.

Argued September 14, 1973, before Judges KRAMER, WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Howard Lesnick,* for appellant.

*Charles L. Ford,* Assistant Attorney General, for appellee.

OPINION BY JUDGE ROGERS, October 31, 1973:

Joseph L. Harris, a professional boxer of remarkable talent, who engaged in his profession under the sobriquet "Gypsy Joe Harris," here appeals from the order of the State Athletic Commission, made December 5, 1972, refusing to reinstate his boxer's license. The Commission had suspended Mr. Harris's license to box in 1968 on the recommendation of the Commission's physicians, including the world renowned ophthalmologist, Harold G. Scheie, professor and chairman of the Department of Ophthalmology of the Hospital of the University of Pennsylvania. The 1968 suspension was based upon Dr. Scheie's finding that Harris's right eye was almost completely blind and had been for two years and the reports of other medical examinations by quali-

fied physicians dating back to 1965 showing that Mr. Harris had suffered a serious injury to his right eye when, a lad of eleven [or thirteen] years of age, he was struck by a brick; that Mr. Harris had blurred vision after that accident; and that such vision as he had in 1965 deteriorated between that time and 1968. Dr. Scheie twice examined Harris after 1968. On January 29, 1969, he described the right eye as "still a blind, degenerative globe." On February 3, 1972, incident apparently to the application by which this litigation was instituted, Dr. Scheie reported that "The right eye remains blind, and *the left eye shows peripheral pigmentation of the retina which is compatible with previous traumas.*" (Emphasis supplied.)

During the period from February 1965 through October 1968, Mr. Harris won 24 of 25 fights. His very able counsel argues that Mr. Harris has a constitutionally protected property right to engage in his chosen occupation, which may be regulated under the police power in the public interest, but may not be restricted by the Commission in his private interest.

The appellant concedes that the State through the Commission may regulate boxing in the interests of public morality and specifically may prevent public exhibitions of grossly unfair and punishing encounters. He contends, however, that the Commission's action was not based upon these considerations but solely upon its interest in his private welfare, because his accomplishments as a boxer while blind in one eye establishes on the record that he will be at no disadvantage by reason of his handicap and will not be the victim in cruel or punishing matches. This is an ingenious argument and one which the appellant, justifiedly from his standpoint, doubtless sincerely believes.

The appellant further argues that the Pennsylvania Athletic Code, Act of August 31, 1955, P. L. 531, 4 P.S. §30.101, by providing for physical examinations before

and after bouts[1] and for special procedures in cases where boxers have been badly beaten,[2] limits the Commission's scope of judgment upon a boxer's fitness, barring a sudden trauma, to his actual performance in the ring.

We are unable to agree with either contention. Whether boxing is considered an unseemly vestige of the gladiatorial contests which were perhaps the profoundest vice of pagan Rome or the manly art of self-defense recommended for gentlemen by that difficult nobleman, the Ninth Marquess of Queensberry,[3] one objective of each practitioner is to inflict as much injury upon his opponent as possible. And serious injuries are sustained despite the best efforts of conscientious athletic commissions and their dedicated medical advisors, including in his day the dean of American medicine, the late Dr. John B. Deaver of Philadelphia. It seems to us, as it doubtless did to the Commission, that a bout in which one participant has a blind eye is grossly unfair and contains the ingredients of an immoral spectacle. The appellant's record indeed establishes that he has been a skillful boxer. It does not establish that if he continues to fight, especially since his blindness is known, that a future opponent who, by exploiting the appellant's handicap or by a chance blow from the blind side, will not inflict serious injuries upon this disadvantaged boxer. The appellant lost his right eye as the result of a blow. Should the State provide him with a license to hazard the other eye in a public exhibition against another fighter bent on inflicting in-

---

[1] 4 P.S. §30.205.

[2] 4 P.S. §30.254-256.

[3] If Queensberry had employed his knowledge of fisticuffs instead of the written insult in his punishment of Oscar Wilde, and if the latter had retaliated in verse instead of at law, boxing, literature and the criminal law of England all would have been the gainers.

jury wherever, within the rules, he is able? We hold that the State through the Commission may prevent an event so clearly contrary to the public's interest in fair contests between opponents as equally matched as their records and physical examinations can ensure.[4]

The Legislature, contrary to the appellant's contention, has clearly empowered the Commission to deny licensure on a basis other than the boxer's previous performances. It lists third among the attributes to be possessed of a licensed boxer and before skill in the profession, that he be physically fit, and has directed the Commission to consider not only the public welfare but also the preservation of the safety and health of the participants. The Pennsylvania Athletic Code, *supra*, §311, 4 P.S. §30.311.

We have carefully read and considered the authorities cited to us by the appellant in support of his right to make a living at boxing despite his infirmity. None of them concerned pursuits which are conducted for the amusement of the public in which the practitioners' whole purpose is to injure or to avoid injury by another person. The appellant's dependence upon *Commonwealth v. Arnold*, 215 Pa. Superior Ct. 444, 258 A. 2d 885 (1969) is misplaced. The statement in that case (upholding the State's power to require that motorcycle operators wear protective helmets) to the effect that the State may restrict an individual's activities only in order to protect the safety or welfare of the public, if accurate, is not authority contrary to the Commission's action here. Mr. Harris is being restrained from engaging in an activity which may result in grave injury to himself and which may also provide a spectacle of cruel-

---

[4] For instance, the Pennsylvania Athletic Code specifically prohibits matches between opponents whose weights differ by more than ten (10) points, except in the heavyweight and light heavyweight classes, 4 P.S. §30.207.

ty exactly contrary to the public's interest in fair boxing matches.

We are impelled to add that Mr. Harris's retirement was a great loss, of course, to him but also to the sport in which he was so brilliantly skilled.

## ORDER

And now, this 31st day of October, 1973, the Commission's Order of December 5, 1972 is affirmed.